Preston "Harold" DAIGRE,
Plaintiff-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana
State Penitentiary, et al.,
Defendants-Appellees.

No. 83–3122

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1983.

As Amended on Denial of Rehearing
Jan. 19, 1984.

Preston Daigre, Pro Se.

J. Marvin Montgomery, Karen L. Godwin, Asst. Attys. Gen., Baton Rouge, La., for defendants-appellees.

Before CLARK, Chief Judge, RUBIN and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this § 1983 action a Louisiana state prisoner complains that he was improperly subjected to disciplinary punishment and that the conditions thereafter imposed on him in administrative and punitive lockdown constituted cruel and unusual punishment. After an evidentiary hearing before a magistrate, the district court dismissed the action. We agree that none of Daigre's constitutional rights have been violated, and affirm.

■ Daigre first argues that evidence of his conduct supported only a finding of disrespect (maximum of five days' isolation), not defiance (maximum of ten days' isolation). The Disciplinary Board found that Daigre cursed an officer; this court has held that the Magistrate is not to review the facts de novo but simply to decide whether there was evidence to support the findings. *Smith v. Rabalais*, 659 F.2d 539 (5th Cir.1981). The Magistrate found the evidence sufficient, and we agree. Therefore, assuming the facts as found by the Board, the issue is whether the ten-day penalty was improper; the difference in penalty revolves about whether the curse was uttered in the officer's presence.

The disciplinary report, prepared by Officer Andrews and edited in trial testimony for language, grammar, and spelling, stated, "He was cursing and called security personnel 'mother blank pigs' and 'son of a ...' He then stated he was going to file a writ on all 'mother blank' security officers at Camp J." Daigre argues that he was only cursing the absent officers of Camp J. However, a Camp J security officer named Foster was present when, according to Officer Andrews's testimony, Daigre cursed security personnel as a group. Imposition of the lengthier penalty was, therefore, supported by evidence and not, as Daigre contends, arbitrary.[1]

■ Daigre also alleges that the living conditions in administrative and punitive lockdown were so unhygienic as to violate the eighth amendment's proscription of cruel and unusual punishment. He testified that in administrative lockdown his blanket and mattress were "dirty and filthy." Ac-

1. *See generally Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (outlining procedural safeguards to insure that state-created rights are not "arbitrarily abrogated").

cording to trial testimony, blankets were laundered not more than once a week; one witness testified that up to three weeks could lapse between launderings. Along with mattresses, the blankets were removed each morning and then replaced at night. Testimony concerning whether the same mattress and blanket were returned to the inmate each night is inconclusive, though one officer testified that it was possible for them to be mixed up and, as a result, inmates might receive blankets soiled by others.

The district court held that the laundering of blankets only once a week does not violate the eighth amendment, but beyond this, it made no explicit findings of fact. Given Daigre's testimony that he did not complain or request clean blankets while in administrative or punitive lockdown and others' testimony concerning punitive lockdown procedures, we assume that the court found the blankets and mattresses to be reasonably sanitary. The record does not compel us to disturb that finding or the legal conclusion it supports.

We turn to Daigre's second complaint about living conditions. Inmates in punitive lockdown are permitted to shower with soap each morning but are denied soap and towels in their cells. Thus, although they have access to cold running water, prisoners cannot wash their hands with soap between using the toilet and eating their meals.

■ As a safeguard against the "gratuitous infliction of suffering,"[2] the eighth amendment forbids confinement under conditions that can lead to painful and torturous disease with no penological purpose.[3] We concluded over a decade ago that the eighth amendment forbids deprivation of the basic elements of hygiene.[4] We observed this "common thread" woven through judicial condemnations of prison conditions, noting in most of the prior cases the deprivation of facilities for elementary sanitation.[5]

■ We recognize that isolation is punitive, that prisoners so confined have demonstrated their defiance of prison rules, and that deprivations beyond those imposed on the general prison population is the very essence of internal prison discipline. We are unable to perceive a particular need for or purpose of depriving inmates of soap.[6] Nonetheless, some measure of hygiene is provided prisoners in isolation, for their cells have running water. Moreover, the record does not establish that Daigre's isolation cell is generally unsanitary or that while in isolation Daigre was forced by the denial of utensils to eat with his hands. Under these circumstances, the denial of soap and towels is neither cruel nor inhumane.

Finally, Daigre argues that restrictions on his correspondence during administrative lockdown and isolation violate the first amendment. During his special confinement, prison officials permitted Daigre to receive personal mail, but did not permit him to write letters except to courts and legal counsel and withheld from him bulk mailings, newspapers, and magazines. The district court held that these restrictions do

---

**2.** *Gregg v. Georgia,* 428 U.S. 153, 181, 96 S.Ct. 2909, 2929, 49 L.Ed.2d 859, 879 (1976).

**3.** *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251, 258 (1976); *Rhodes v. Chapman,* 452 U.S. 337, 362, 101 S.Ct. 2392, 2407, 69 L.Ed.2d 59, 78 (1981) (Brennan, J., concurring).

**4.** *Novak v. Beto,* 453 F.2d 661, 665 (5th Cir. 1971).

**5.** Regarding the deprivation of soap and towels in an unsanitary environment, see our discussion of *Wright v. McMann,* 387 F.2d 519 (2d Cir.1967); *Hancock v. Avery,* 301 F.Supp. 786 (M.D.Tenn.1969); and *Jordan v. Fitzharris,* 257 F.Supp. 674 (N.D.Cal.1966) in *Novak,* 453 F.2d at 665. *See also Gates v. Collier,* 501 F.2d 1291, 1301, 1305 (5th Cir.1974); *Wright v. McMann,* 387 F.2d 519, 526 (2d Cir.1967) and 460 F.2d 126, 127 (2d Cir.1972); *Campise v. Hamilton,* 382 F.Supp. 172, 176 (S.D.Tex.1974); *cf., Anderson v. Nosser,* 438 F.2d 183 (5th Cir. 1971).

**6.** The Louisiana Sanitary Code, Chap. XV, sec. 15.50.3 (1977), provides, in part, "Hand washing lavatories, complete with hot and cold water, delivered through a mixing faucet shall be provided in each cellblock, including disciplinary cells."

not rise to the level of a constitutional violation.

 Prison mail restrictions are, of course, not immune to constitutional scrutiny, for they interfere not only with prisoners' first-amendment interests, but with those of their would-be correspondents as well.[7] The Supreme Court has expressly left undecided what distinctions prison authorities may draw for this purpose between persons who are confined solely as punishment for crime and those who are subjected to further discipline for violation of prison regulations.[8] The Court has instructed us, when reviewing prison mail restrictions, to inquire first, whether restrictions further an important or substantial government interest and second, whether the restrictions are greater than necessary or essential to protect that interest.[9]

Although the district court did not elaborate this analysis, there can be no doubt, as we have already noted, that solitary confinement is a disciplinary measure whose very essence is the deprivation of interests the first amendment protects: association with the general prison population and communication with outsiders. To promote the important government interest in maintaining discipline, officials must have available sanctions that impose incremental disadvantages on those already imprisoned. Left free to write to anyone in the world and to receive literature of any kind, a prisoner might find punitive isolation desirable, offering solitude and leisure as an alternative to the ordinary conditions of prison work and life. Thus, a narrower restriction on first amendment interests would likely prove ineffective in maintaining discipline. Therefore, the specific limitations imposed do not violate the first amendment.

For these reasons, the judgment is AFFIRMED.

---

7. *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *see generally* J. Gobert and N. Cohen, Rights of Prisoners, 99–125 (1981).

8. *Martinez,* 416 U.S. at 412 n. 12, 94 S.Ct. at 1811 n. 12, 40 L.Ed.2d at 239 n. 12.

9. *Id.,* 416 U.S. at 412, 94 S.Ct. at 1811, 40 L.Ed.2d at 239.