956 F.2d 275
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sean J. MATTHEWS, Plaintiff-Appellant,
v.
Al MURPHY, Director, Idaho State Correctional Institution;
Arvon Arave, Warden, Idaho State Correctional Institution;
George Benick, Deputy Warden, Idaho State Correctional
Institution; Jim Gibbison, Administrative Investigator,
Idaho State Correctional Institution; Fred Brewer,
Lieutenant, Idaho State Correctional Institution; Wayne
Nimmo, Lieutenant, Idaho State Correctional Institution;
and Charles Swindell, Sergeant, Idaho State Correctional
Institution, Defendants-Appellees.
 No. 90-35458.
 United States Court of Appeals, Ninth Circuit.
 Submitted on the Brief May 10, 1991.*
Decided Feb. 25, 1992.
 
 1
 Before EUGENE A. WRIGHT and O'SCANNLAIN, Circuit Judges, and LEW, District Judge.***
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Sean J. Matthews filed this civil rights action against various prison officials at the Idaho State Correctional Institution where Matthews is currently incarcerated. The district court awarded summary judgment in favor of the prison officials. We affirm the district court's judgment in its entirety.
 
 I. Standard of Review
 
 4
 "We review de novo a district court's grant or denial of a motion for summary judgment." Lockary v. Kayfetz, 917 F.2d 1150, 1153 (9th Cir.1990). "We may affirm a grant of summary judgment only if the trial court properly found that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law." Id. This court must view the evidence in the light most favorable to the nonmoving party in making its determination of the propriety of the district court's ruling. California Rural Legal Assistance v. Legal Services Co., 917 F.2d 1171, 1174 (9th Cir.1990).
 
 II. Background
 
 5
 On December 4, 1986, a riot erupted in the cellblock housing the most dangerous prisoners of the Idaho State Correctional Institution ("ISCI"); this cellblock is known as Unit 8, B tier. The rioting prisoners, including Matthews, destroyed the cellblock by smashing windows and walls, tearing out electrical fixtures and wiring, setting fires and flooding the unit. The rioters' activities continued until a SWAT team regained control of the unit on December 5.
 
 
 6
 After the SWAT team regained control of the unit, the prisoners were strip searched and temporarily placed in empty, undamaged cells in the same unit. Matthews claims he was left in the cell for two hours without clothing, that he cut his hands and feet on broken glass in the new cell in which he was placed, and that he was denied medical attention and basic hygienic materials. The prison officials claim Matthews' needs were attended to reasonably given the ongoing emergency situation.
 
 
 7
 On December 6, the prisoners who had been transferred to undamaged cells started a new riot. Again, Matthews participated. He tore off fixtures within his new cell and smashed a hole in the wall separating his cell from that of a neighboring prisoner.
 
 
 8
 Once again, a SWAT team had to quell the disturbance. Matthews was handcuffed and strip searched. Matthews claims he was rolled back and forth over glass during the search and received further injuries. Matthews did receive medical treatment for minor injuries.
 
 
 9
 Because the maximum security cellblock was destroyed by the rioters, prison officials were forced to house Matthews in a less secure cellblock unit for approximately two months. Matthews claims he was initially placed in an isolation strip cell for two days in which he was denied basic supplies including a mattress, toilet paper, and other personal hygiene items. He claims he was then placed in a "step cell" program as punishment for his participation in the riot.[1] Matthews claims he was in isolation for 91 days, 34 of which were in the step cell program. Matthews further claims that during the 34 days of step cell punishment, he was denied for varying periods of time hygienic supplies, writing and reading material, access to legal resources, access to the telephone, and out-of-cell exercise.
 
 
 10
 The prison officials deny they unreasonably withheld basic necessities from Matthews. They claim any delays in providing such necessities were caused by Matthews' new location in a less secure cellblock.
 
 III. Discussion
 
 11
 The dispositive issues raised by this appeal are (1) whether the district court properly granted summary judgment to defendant prison officials on Matthews' claim that the Curtis injunction against the use of "step cell" programs was violated; (2) whether the district court properly granted summary judgment to the prison officials on Matthews' claims he was subjected to cruel and unusual punishment and was deprived of due process during the prison riot; and (3) whether the district court properly granted summary judgment to the prison officials on Matthews' claims that he was subjected to cruel and unusual punishment, deprived of his first amendment rights and deprived of due process subsequent to the prison riot. The court will address each issue in order.
 
 
 12
 A. The District Court Properly Granted Summary Judgment In Determining That No Material Issue Existed On Whether The Curtis Injunction Was Violated.
 
 
 13
 Matthews alleged in counts three and four of his complaint that he was placed in an isolation strip cell for two days, then subjected to a step cell program during the post-riot period. Matthews claims these actions were done in direct violation of a state court injunction issued in Curtis v. Idaho, 4th Dist.Ct., Ada County, Idaho (June 1985).
 
 
 14
 In Curtis, a mentally ill prisoner was incarcerated in the same Idaho prison as Matthews. Curtis engaged in disruptive and uncooperative behavior; this behavior was apparently caused by Curtis' mental illness. In response to this behavior, prison officials placed Curtis in a step cell program for seven weeks. Curtis was subjected to a cyclical routine in which basic supplies were removed for a period of several days, restored, and then removed again.
 
 
 15
 The state court in Curtis permanently enjoined the use of step cell programs in Idaho prisons until a time when rules and regulations could be enacted delineating the conditions under which such programs would be permissible and specifying procedures for implementation of the programs. Absent procedures for implementation of step cell programs, the Curtis court concluded that the use of step cell programs constituted cruel and unusual punishment and a violation of due process rights.
 
 
 16
 In Matthews' case, the district court properly ruled that application of the Curtis injunction was inappropriate given the unique situation presented by the situation following the riot. Curtis enjoined the use of strip and step cells for punishment or behavior modification. The deprivations to which Matthews was subjected here were for security reasons. The destruction of the maximum security Unit 8 by the riot forced the prison officials to move Matthews to Unit 7, a unit not ordinarily used for maximum security inmates. The officials actions were also motivated by a concern that Matthews would spread the riot into Unit 7.[2]
 
 
 17
 The district court found that the deprivations alleged by Matthews were for security reasons, and this was the only basis argued in the summary judgment motion. Given this, the court cannot say the district court's ruling was erroneous. The Curtis injunction was inapplicable to the facts as presented on the summary judgment motion and summary judgment was proper on the issue of whether the injunction was violated and was proper on counts three and four.
 
 
 18
 B. The District Court Properly Granted Summary Judgment To The Prison Officials On Matthews' Claims He Was Subjected To Cruel And Unusual Punishment And Was Deprived Of Due Process During The Prison Riot.
 
 
 19
 In counts one through three of his complaint, Matthews alleged constitutional deprivations in violation of the Eighth and Fourteenth Amendments by prison officials during the course of the riots.
 
 
 20
 In Whitley v. Albers, 475 U.S. 312 (1986), the Supreme Court laid out the standard for determining the constitutional requirements imposed on the actions of prison officials during riot circumstances:
 
 
 21
 "Where a prison security measure is undertaken to resolve a disturbance ... that indisputably poses significant risks to the safety of inmates and prison staff, ... the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' "
 
 
 22
 Id. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973), cert. denied, 414 U.S. 1033 (1973) (emphasis added)); see also Vaughan v. Ricketts, 859 F.2d 736, 742 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) (adopting the same standard). The evidence must support a "reliable inference of wantonness in the infliction of pain...." Whitley, 475 U.S. at 322.
 
 
 23
 In Whitley, prison officials shot plaintiff prisoner in the legs during the quelling of a riot. Id. at 1082. In analyzing the prison official's actions under the Eighth Amendment, the Supreme Court held that this shooting, given the circumstances of the prison officials' efforts to restore prison security during a riot, did not violate the prisoner's rights. Id. at 1087.
 
 
 24
 In the instant case, the actions of the prison officials were not as egregious as those taken by the prison officials in Whitley. Matthew merely alleges that he was strip searched twice and that he received some cuts from broken glass while being transferred to a different cell. It is uncontroverted that a violent riot was taking place in the cellblock during this time and that Matthews participated in the riot. The level of force used by the SWAT team to subdue Matthews and secure him in a new cell was reasonable under the circumstances, especially since other, more drastic measures, such as tear gas or taser stun guns, were available. The lack of immediate medical attention and provisions of clothes and essentials to Matthews during the riot was also reasonable given the crisis circumstances. The prison officials offered evidence that all of their efforts were, at this time, directed toward quelling the ongoing riot.
 
 
 25
 The court finds that the district court properly granted summary judgment to the prison officials on counts one through three. There was no genuine issue of material fact for a finder of fact to decide on these counts.
 
 
 26
 C. The District Court Properly Granted Summary Judgment To The Prison Officials On Matthews' Claims That He Was Subjected To Cruel And Unusual Punishment, Deprived Of His First Amendment Rights And Deprived Of Due Process Subsequent To The Prison Riot.
 
 1. Eighth Amendment Claims
 
 27
 As a general rule, where the conditions of confinement are at issue in an Eighth Amendment claim, the
 
 
 28
 "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment.... conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."
 
 
 29
 Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In addition, the Eighth Amendment prohibits punishment that "transgress[es] today's 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.' " Hutto v. Finney, 437 U.S. 678, 685 (1978) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). An institution's obligations under the Eighth Amendment end if the institution provides its sentenced prisoners with adequate shelter, clothing, food, sanitation, medical care and personal safety. See Hoptowit v. Ray, 682 F.2d 1237 (9th Cir.1982).
 
 
 30
 Matthews alleges in count four that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days following the riot. He claims this practice constituted cruel and unusual punishment in violation of the Eighth Amendment. While it has been held that "the eighth amendment forbids deprivation of the basic elements of hygiene," Matthews' allegations, even if true, do not rise to the level of an Eighth Amendment violation. Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir.1983)
 
 
 31
 In Daigre, plaintiff prisoner was denied soap and towels in his cell so as to prevent proper washing of the hands before meals. Id. The court held that since there was no evidence that the prisoner's cell was "generally unsanitary" or that he was forced to "eat with his hands," there was no violation of the Eighth Amendment. Id.; see also Novak v. Beto, 453 F.2d 661 (5th Cir.1971), cert. denied, 409 U.S. 968 (1972) (holding that conditions in which inmates could bathe only three times a week, and where the inmates received toilet paper, toothbrush, and toothpaste, were not so unsanitary to rise to the level of a Eighth Amendment violation); but compare Gates v. Collier, 501 F.2d 1291 (5th Cir.1974) (Eighth Amendment violated where naked prisoner was placed in small, unclean cell without light, hygienic material, bedding, or adequate food, and where prisoner was not allowed to wash himself). Here, Matthews presents no evidence whatsoever that his conditions were "generally unsanitary." Therefore, the facts alleged do not support an Eighth Amendment claim and summary judgment on this claim was appropriate.
 
 
 32
 Matthews also claims in count five that deprivation of outdoor exercise for 91 days and out-of-cell exercise for 27 days constituted cruel and unusual punishment. Matthews is incorrect. In addition to the general rule of Rhodes, discussed above, this Circuit has held that denial of out-of-cell exercise in response to a genuine emergency is not a violation of the Eighth Amendment. Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir.1980), cert. denied, 451 U.S. 937 (1981).
 
 
 33
 In Hayward, the court upheld a one month confinement without out-of-cell exercise for six prisoners due to increasing violence in the prison. Id. Here, Matthews was deprived of out-of-cell exercise for less than one month. Furthermore, Matthews' normal routine was restored after he was transferred back to the repaired maximum security cellblock he had earlier participated in destroying. Under Hayward, the deprivation Matthews experienced does not rise to a violation of the Eighth Amendment. Summary judgment was properly granted on this claim.
 
 2. First Amendment Claim
 
 34
 In count six of his complaint, Matthew alleged his First Amendment rights were violated because he was not allowed to have any reading material, including a Bible, in his cell for 34 days. The district court analyzed this claim under the Eighth Amendment, applying the Hayward standard to conclude there was no violation. The court noted that Matthews had set fires during the riot, implying that prison officials were justified in denying Matthews any combustible materials.
 
 
 35
 In Daigre, 719 F.2d at 1313, the Fifth Circuit upheld the withholding of newspapers and magazines from an inmate placed in isolation for disciplinary reasons. The Daigre court found that there was an important governmental interest in maintaining discipline, and that "officials must have available sanctions that impose incremental disadvantages on those already imprisoned." Id. Any narrower restriction on the inmate's First Amendment interests would likely prove ineffective in maintaining discipline. Id.
 
 
 36
 Here, the prison officials had more reason to restrict Matthews' access to reading materials than did those in Daigre. He had set fires during the riot. Restricting access to combustible reading materials served to insure that Matthews could not set further fires and cause more disturbances. Given that Matthews was being housed in a less secure cell than normal, the temporary deprivation to which Matthews was subjected did not rise to the level of a violation of the First Amendment. The district court did not err in granting summary judgment on this issue.
 
 3. Due Process Claims
 
 37
 Matthews' complaint alleges that prison officials violated his substantive due process rights.[3]
 
 
 38
 Counts seven and eight allege Matthews was denied legal phone access for 48 days, personal phone access for 120 days, the right to buy or receive state-issued postage stamps for 70 days, the use of the prison law library for six weeks, access to his personal legal files for approximately 21 days, and visits from inmate legal clerks for six weeks. With the exception of personal phone access, these claims can be combined into a general claim that Matthews was denied access to the courts.
 
 
 39
 a. Right of Access Claims
 
 
 40
 Right of access claims are analyzed as follows: First, the court must decide "whether the right of access claimant alleges ... a denial of 'adequate law libraries or adequate assistance from persons trained in the law.' " Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989) (citation omitted). Second, if no such allegation has been made, the court must decide "whether the plaintiff has alleged an 'actual injury' to court access," where "actual injury" is a "specific 'instance in which an inmate was actually denied access to the courts.' " Id. (citation omitted).
 
 
 41
 (1) Denial Of Telephone Access And Postage Stamps
 
 
 42
 In ruling on the substantive due process claims raised in count seven of the complaint, with respect to denial of telephone access and postage stamps, the district court applied the actual injury test articulated in Sands. The district court granted summary judgment to the prison officials because Matthews failed to identify a specific instance in which the denial of telephone access and postage stamps prevented his access to the courts. The district court noted that Matthews had four cases pending in federal court, and suggested that denial of "meaningful access ... borders on the ludicrous in light of all the circumstances."
 
 
 43
 The district court's ruling on these claims of denial of access to the courts was not erroneous. Matthews did not allege a denial of adequate law libraries or adequate assistance from trained legal advisors, and thus the first prong of the test articulated in Sands was not applicable. A review of the evidence presented by Matthews supports the district court's finding that Matthews did not present evidence of a single instance where denial of these privileges prevented his access to the courts. Summary judgment was properly granted.
 
 
 44
 (2) Denial Of Access To Law Library, Inmate Clerks, And Personal Legal Materials
 
 
 45
 In count eight of his complaint, Matthews alleged he was improperly denied access to the prison's law library, inmate clerks, and personal legal materials. Again, the court finds that the district court properly granted summary judgment on this count. The evidence supports the district court's findings that Matthews was given writing materials while in Unit 7 and that prison law clerks visited him within 9 days of his placement in the unit. The court finds that Matthews has not shown he was injured as required under Sands. Summary judgment was properly rendered.
 
 
 46
 b. Denial Of Personal Phone Access Claim
 
 
 47
 Matthews claimed he was denied access to the phones for personal use for 120 days. The court has reviewed the Idaho codes and regulations and has not found anything that gives the right of access to phones for personal usage to prisoners. This indicates to the court that such access is a privilege and not a right. Additionally, Plaintiff has cited no authority for the proposition that complete denial of access to phones violates contemporary constitutional standards. The court concludes that this denial of access did not violate due process. Summary judgment was properly granted.
 
 
 48
 c. Denial Of Grievance Process Claim
 
 
 49
 Matthews also makes a substantive due process claim in count nine of his complaint in which he alleges he was denied access to a grievance process. In granting summary judgment on this issue, the district court noted that "a state's failure to follow its grievance procedures does not give rise to a Section 1983 claim." This conclusion was proper. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988), cert. denied, 488 U.S. 898 (1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The district court did not err in granting summary judgment here.
 
 IV. Conclusion
 
 50
 Summary judgment was properly granted for the defendant prison officials.
 
 
 51
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Ronald S.W. Lew, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under a "step cell" program, basic supplies are gradually returned to the punished prisoner over a period of time
 
 
 [2]
 In addition to destroying two cells in Unit 8, Matthews immediately tore up his sheet and tied his Unit 7 cell door shut. He also had participated in prison riots on other, earlier occasions, and was disciplined the month before for shooting another inmate with a "zip" gun
 
 
 [3]
 The Court has reviewed the complaint and finds no facts which suggest a violation of procedural due process