972 F.2d 1348
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Larry WILSON, Plaintiff-Appellant,
v.
Robert TIMKO, et al., Defendant-Appellee.
 No. 91-16055.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 29, 1992.*
Decided Aug. 5, 1992.
 
 Before TANG, BEEZER and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Larry Wilson, a Nevada state prisoner, appeals pro se the district court's summary judgment and dismissal of his 42 U.S.C. § 1983 action against various prison officials. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo, Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990), and affirm.
 
 
 3
 * Summary Judgment
 
 
 4
 Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catratt, 477 U.S. 317, 323 (1986). The moving party must demonstrate there is no genuine issue of material fact. Celotex, 477 U.S. at 324. When reviewing summary judgment, this court views the evidence in the light most favorable to the nonmoving party. California Rural Legal Assistance, Inc. v. Legal Servs. Co., 917 F.2d 1171, 1174 (9th Cir.1990). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must demonstrate that defendants, acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. 42 U.S.C. § 1983; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988).
 
 II
 Background
 
 5
 Wilson, while incarcerated in Ely State Prison, was serving a two-year sentence in disciplinary segregation for possessing prison-made weapons. On March 2, 1990, at approximately 8:00 p.m., Wilson deliberately caused his toilet to overflow and flood the upper and lower tiers of his unit. At approximately 8:05 p.m., a prison official turned off the water to Wilson's cell. Wilson told a prison official that he would flood his cell again if his water was turned on. On March 3, 1990, at 9:00 p.m., a prison official discovered that Wilson had broken a broom and placed pieces of the broken handle in his toilet. To prevent further destruction of state property, prison officials "stripped out" Wilson's cell. Wilson was left with a mattress, one blanket, one toothbrush, toothpaste, and an orange jumpsuit.
 
 
 6
 Between 2:00 and 2:30 p.m. on March 5, 1990, Wilson's personal property was returned to his cell and the water to his cell was turned on. During the 2 1/2 days that the cell was "stripped," prison officials provided Wilson three meals a day, plus liquids, offered him several cups of additional water, and provided him tylenol.
 
 
 7
 Wilson's complaint alleged that prison officials violated his First, Fourth, Sixth, Eighth and Fourteenth Amendment rights by: (1) turning off the water to his cell, (2) depriving him of drinking water, an administrative remedy application, aspirin, institutional kite, a broom, and a mop, (3) threatening to use force if he did not accompany them to the Associate Warden's office, and (4) removing his personal property, including clothing, religious and legal material, bedding, and hygiene supplies, from his cell.
 
 III
 Merits
 A. First Amendment Violations
 
 8
 "Inmates retain their First Amendment right to free exercise of religion; however, this right is limited by virtue of their incarceration." Friend v. Kolodzieczak, 923 F.2d 126, 127 (9th Cir.1991) (citing O'Lone v. Shabazz, 482 U.S. 342, 348 (1987)).
 
 
 9
 Wilson alleged prison officials violated his First Amendment rights by removing his personal property, including his religious material, for 2 1/2 days. Wilson failed to present specific facts showing that the short deprivation of unspecified religious material interfered with the exercise of his religion. Because Wilson failed to allege or provide any trial worthy facts to support his claim, summary judgment on this claim was proper. See Celotex, 477 U.S. at 323.[1]
 
 B. Fourth Amendment Violations
 
 10
 An inmate has no reasonable expectation of privacy in his prison cell. Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). The Fourth Amendment prohibition against unreasonable searches and seizures by the government does not apply within the prison cell. Id. at 526.
 
 
 11
 Here, Wilson alleged the prison officials violated his Fourth Amendment rights by searching his cell and seizing his property.[2] Because the Fourth Amendment does not prohibit such search or seizure, Wilson's Fourth Amendment rights were not violated. See id.[3]
 
 C. Eighth Amendment Violations
 
 12
 The majority of Wilson's allegations involve claims that prison officials subjected him to cruel and unusual punishment in violation of the Eighth Amendment.
 
 
 13
 The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" upon inmates. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991). A state satisfies its Eighth Amendment obligations if it provides adequate food, clothing, shelter, sanitation, medical care, and personal safety. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982) (quotations omitted). The Eighth Amendment standards for conditions in segregation are the same as the standards that apply to the general prison population. Id. at 1258. In considering whether prison officials have deprived an inmate of rights, the court may consider the length of time the inmate must go without the benefits. Id. The more basic the need, the shorter time it may be withheld. Id. at 1259.
 
 
 14
 "It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement ... or restoring official control over a tumultuous cellblock." Whitley v. Albers, 475 U.S. 312, 319 (1986). When prison officials undertake a security measure to resolve a disturbance that poses a significant risk to the safety of inmates and prison staff, the court examines "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 320-21.
 
 
 15
 Here, prison officials turned off the water and stripped the cell in response to Wilson's disruptive and destructive behavior. As a consequence, Wilson was unable to flush his toilet or shower for 2 1/2 days. Nevertheless, Wilson was not denied his basic needs. See Hoptowit, 682 F.2d at 1246-47. While his cell was stripped, he was provided three meals a day, drinking water every few hours, and tylenol. He had a mattress and one blanket, a toothbrush and toothpaste, and clothing.
 
 
 16
 The prison officials' action comported with the Eighth Amendment because it was not "so totally without penological justification that it result[ed] in the gratuitous infliction of suffering." See Gregg v. Georgia, 428 U.S. 153, 183 (1976). Because Wilson was serving administrative segregation when he flooded his cell and adjoining tier and destroyed state property, there was no alternative sanction to encourage disciplined behavior. The prison officials have demonstrated that they stripped Wilson's cell in a "good faith effort" to restore discipline. See Whitley, 475 U.S. at 320-21. This temporary restriction of amenities was not cruel and unusual punishment, especially given that turning off the water related specifically to Wilson's disruptions. See Hoptowit, 682 F.2d at 1246 (Eighth Amendment does not require that inmates be provided all amenities or that inmates be comfortable). Cf. Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir.1983) (denying inmate soap and towel in his cell did not violate Eighth Amendment).
 
 
 17
 Moreover, prison officials did not violate Wilson's Eighth Amendment rights by threatening to inflict bodily harm on Wilson if he did not accompany them to the Associate Warden's office. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987) ("mere naked threat[s]" by prison guards do not amount to an Eighth Amendment violation).
 
 
 18
 The district court properly granted summary judgment in favor of the prison officials on all counts. See Celotex, 477 U.S. at 323.[4]
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Wilson also alleged prison officials violated his First Amendment right to redress his grievances by denying his request for an administrative remedy application. See Bounds v. Smith, 430 U.S. 817, 821 (1977). The record does not support Wilson's allegation. As Wilson admitted in his complaint, on March 3, 1990, he was given two opportunities to discuss the incidents involved. Because Wilson raised no trial worthy facts to support this claim, summary judgment was proper. See Celotex, 477 U.S. at 323
 
 
 [2]
 Additionally, Wilson alleged prison officials denied him of due process by stripping his cell without prior notice. Nevertheless, because Wilson has no liberty interest in his cell or personal property, due process does not require prior notice or hearing. See Hewitt v. Helms, 459 U.S. 460, 466-67 (1983) (due process required only where liability interest is implicated). Furthermore, the deprivation of Wilson's property, even if tortious, does not constitute a due process violation. See Hudson, 468 U.S. at 533 (no due process violation where meaningful postdeprivation remedy is available)
 
 
 [3]
 The temporary deprivation of Wilson's legal material likewise did not violate his constitutional rights. See Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989); Vigliotto v. Terry, 873 F.2d 1201, 1202-03 (9th Cir.1989) (3-day deprivation of legal materials did not violate constitutional rights)
 
 
 [4]
 The district court properly granted summary judgment on Wilson's Sixth Amendment claim. Wilson's complaint contained no allegation that would support such a claim