Clarence Bill McCORD,
Plaintiff-Appellant,

v.

Ross MAGGIO, Jr., Defendant-Appellee.

No. 88-3205.

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1990.

Clarence Bill McCord, Angola, La., pro se.

Joseph Kopsa, Dept. of Justice, Adair D. Jones, J. Marvin Montgomery, Asst. Attys. Gen., Baton Rouge, La., for defendant-appellee.

Before BROWN, JOLLY, and DAVIS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The plaintiff-appellant, Clarence McCord, a prisoner at Louisiana State Penitentiary, appeals from the Magistrate's denial of relief under 42 U.S.C. § 1983 for initial and ongoing incarceration in extended administrative lockdown ("CCR") and violations of the prisoner's Eighth Amendment rights relative to medical care and the conditions under which the prisoner was held in CCR. Because findings of fact necessary to the determination of whether the conditions of extended administrative lockdown violated the prisoner's Eighth Amendment rights, we REMAND this case to the District Court and the Magistrate for further proceedings consistent with this opinion.

## Background

McCord arrived at Louisiana State Penitentiary on January 20, 1982 after being sentenced to life imprisonment. He was immediately placed in single cell confinement in the area designated as "Closed–Cell Restriction" ("CCR") pending assignment by the prison's classification board (the "Board").[1] One week later, McCord appeared before the Board and was assigned to placement in CCR. The Board reviewed McCord's assignment to CCR every three months and determined that ongoing placement in CCR would be maintained.

On appeal, McCord contends that (1) the conditions existing in CCR during his confinement in CCR constitute cruel and unusual punishment, (2) his initial classification to CCR and his continual incarceration to that assigned cellblock was a denial of due process, and (3) he was denied access to medical care during his confinement, also in violation of his Eighth Amendment rights.

## Conditions in CCR

The Magistrate found that physical conditions in CCR were generally poor with the building and fixtures requiring constant repair by prison crews working almost daily on these conditions. He also found that Parish Health officials inspected CCR at least three times in 1982–83 and never condemned it as unfit for human habitation, although numerous deficiencies were noted. Mag. Op. 14–15.

McCord contends on appeal that certain conditions existing in CCR during 1982–1984[2] establish his claim against Warden Maggio for cruel and unusual punishment in violation of the Eighth Amendment. The conditions complained of include confinement for 23 hours a day in an unlighted, windowless cell with only a hole cut in the steel door for outside access, while water and human waste sometimes up to ankle high seeped into the cell from frequently broken fixtures and pipes. McCord also complains that he was provided with a mattress, but no bed at night, requiring him to choose between sleeping on the mattress lain on the wet floor or to stand all night. This testimony was confirmed by three other inmate witnesses and neither refuted nor confirmed by prison officials. As the Magistrate made no finding of facts concerning these contentions, we vacate and remand for these necessary findings and conclusions to adequately assess the merit of McCord's Eighth Amendment claim regarding prison conditions.

---

1. CCR is a form of maximum security lockdown. It is also variously referred to as Closed Cell Reserve or extended lockdown. Mag. Op. 4 (testimony of supervisor of classification). For the purposes of this opinion, we will refer to this classification as CCR or extended administrative lockdown. Placement in CCR can occur for classification or disciplinary reasons.

2. The discussion of this case is necessarily confined to the events and conditions existing in CCR between January 20, 1982 and September 1, 1984, the tenure of then acting warden, Ross Maggio, defendant-appellee in this action.

### Cruel and Unusual Punishment

The Supreme Court has established a "minimum intrusion" policy into the decisions of state prison administration that provides these officials with wide discretion in the operation of prison facilities. *Williams v. Edwards,* 547 F.2d 1206 (5th Cir.1977); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). This judicial restraint, however, cannot involve the failure to recognize the validity of constitutional claims. *Procunier,* 416 U.S. at 405, 94 S.Ct. at 1807. Federal courts have a responsibility to scrutinize claims of cruel and unusual punishment. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir.1983).

In *Bienvenu,* an inmate who was intentionally subjected to a "cold, rainy, roach-infested facility and furnished ... with inoperative, scum-encrusted washing and toilet facilities sufficiently alleged a cause of action cognizable under 42 U.S.C. § 1983 and the Eighth and Fourteenth amendments." *Bienvenu,* 705 F.2d at 1460. Similarly, an inmate forced to sleep on a cold floor in solitary confinement while rats crawled over him has been held to be cruel and unusual punishment. *Foulds v. Corley,* 833 F.2d 52, 53 (5th Cir.1987).

Maggio argues that the CCR facilities were old and worn down, but prison officials did the best that they could given the conditions. Deficiencies noted by the Public Health Department were corrected and the cells cleaned every day. Maggio also contends that State Health and Safety Standards should be used to determine whether an Eighth Amendment violation exists based on the reasoning in *Williams v. Edwards,* 547 F.2d 1206 (5th Cir.1977).

The court in *Williams* approved the use of state fire and sanitation codes as a "valuable index into what levels of decency the public ... is prepared to pay for," but certainly does not stand for the proposition that such standards are the *only* index from which this court will assess Eighth Amendment claims. *Williams,* 547 F.2d at 1214. Conditions not condemned as unfit for human habitation in the prison setting have been held to still amount to a violation of a prisoner's Eighth Amendment rights. *E.g., Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981) (en banc) (totality of circumstances test).

Consistent with the Supreme Courts' pronouncement in *Rhodes,* "[t]he Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual'. The Court has interpreted these words 'in a *flexible and dynamic manner.*'" *Rhodes,* 452 U.S. at 345, 101 S.Ct. at 2398, citing *Gregg v. Georgia,* 428 U.S. 153, 171, 96 S.Ct. 2909, 2924, 49 L.Ed.2d 859 (1976) (joint opinion). We confirm our earlier standard of review as set forth in *Jones* that the "totality of conditions" test prevails in this context and no definitive index exists confining an Eighth Amendment analysis. It is, therefore, essential that the Magistrate make factual findings that elucidate the conditions under which McCord was compelled to exist in order that the totality of conditions may be assessed.

### Extended Administrative Lockdown

McCord contends that his initial and ongoing assignment to CCR is a a denial of due process. The Magistrate found that there are no written criteria mandating classification to CCR or any other area of the prison, nor for release from these cellblocks. The Magistrate also found that the decisions are discretionary on the part of Louisiana State prison officials. Mag. Op. at 4.

The Magistrate concluded that McCord's initial and ongoing classification to CCR was reasonable and not arbitrary. We agree.

Classification of prisoners is a matter left to the discretion of prison officials. *Wilkerson v. Maggio,* 703 F.2d 909 (5th Cir.1983). As pointed out in *Wilkerson,* "[i]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'"

*Wilkerson,* 703 F.2d at 911, citing *McGruder v. Phelps,* 608 F.2d 1023, 1026 (5th Cir.1979). Classification of inmates in Louisiana is the duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification. *Id.* Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

The Magistrate found that the decision to keep McCord in CCR was reasonably related to legitimate security objectives and was not an exaggerated response to security considerations. The record supports the court's findings that the lockdown review board considered McCord's entire record, including (1) both his pre–1982 incarceration record and his current prison record, (2) his attitude and demeanor, (3) his medical records, (4) the institutions need to maintain security and protect McCord from reprisals or harm from other inmates. The record also clearly reflects that McCord's classification was reviewed every ninety days at a Reclassification Board hearing; and he was given prior notice of the classification hearing.

The Supreme Court has stated that "prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). These decisions require only that the conditions and degree of confinement is "within the sentence imposed on the inmate and is not otherwise violative of the Constitution; the Due Process Clause does not in itself subject prison official's treatment of an inmate to judicial oversight." *Hewitt,* 459 U.S. at 468, 103 S.Ct. at 869. The Magistrate's conclusion that McCord's initial and ongoing classification to CCR by the Reclassification Board was reasonable is clearly reflected in the record and McCord has failed to show a denial of due process.

### Medical Care

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a claim under 42 U.S.C. § 1983. *Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S.Ct. 285, 291–93, 50 L.Ed.2d 251 (1976). In the instant case, however, there is no evidence that McCord was denied medical attention, and in fact, there appears extensive records documenting assessment and treatment of McCord's medical complaints by medical practitioners which the magistrate credited.

The Magistrate concluded that McCord's complaints of the denial of medical care were not supported by evidence of Warden Maggio's deliberate indifference to his medical needs or wanton infliction of pain. A review of the record clearly supports these findings and, therefore, McCord's Eighth Amendment claim regarding medical care fails.

Accordingly, the judgment of the district court and the Magistrate is approved insofar as it relates to McCord's alleged denial of liberty without due process and the denial of medical care. It is REMANDED for the district court and the Magistrate to make such findings of fact and conclusions necessary to the assessment of inmate's Eighth Amendment claim pertaining to conditions of confinement.

This court retains control of this appeal pending receipt of a certified copy of the Court's supplemental findings and conclusions, to which the parties without further leave, may file memoranda briefs.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.