**Clarence Bill McCORD,
Plaintiff–Appellant,**

v.

**Ross MAGGIO, Jr., Defendant–Appellee.**

No. 88–3205.

United States Court of Appeals,
Fifth Circuit.

April 2, 1991.

Clarence Bill McCord, Reston, Va., pro se.

Joseph Kopsa, La. Dept. of Justice, Adair D. Jones, J. Marvin Montgomery, Asst. Attys. Gen., Baton Rouge, La., for defendant-appellee.

Before BROWN, JOLLY and DAVIS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Plaintiff-appellant Clarence McCord, an inmate at Louisiana State Penitentiary

(LSP), brought suit for damages under 42 U.S.C. § 1983 alleging violations of the Eighth Amendment prohibition against cruel and unusual punishment. Specifically, McCord complained of (1) initial and ongoing incarceration in extended administrative lockdown, also known as "Closed–Cell Restriction" ("CCR"); (2) conditions in CCR; and (3) inadequate medical care. After a trial on the merits which was held before a magistrate by consent of the parties, 28 U.S.C. § 636(c), the magistrate found all three claims to be meritless and entered judgment in Maggio's favor. We affirmed as to claims (1) and (3) but remanded for further findings of fact as to claim (2). *McCord v. Maggio*, 910 F.2d 1248 (5th Cir.1990). On remand, the magistrate in effect found that the facts were substantially as alleged by McCord. Nevertheless, with little articulation of reasons, the magistrate again determined that McCord's Eighth Amendment rights were not violated, and denied relief.

On these fact findings we REVERSE the magistrate and hold that McCord was in fact subjected to cruel and unusual punishment. Because Maggio was a state official, however, he is not subject to a suit for damages against him in his official capacity. While Maggio also enjoys a qualified immunity in actions against him individually, we hold that he is only entitled to such an immunity under the circumstances of this case if "extraordinary circumstances" prevented his following "established law" in administration of CCR. We find that we must REMAND this case to the district court and the magistrate for the further determination whether the rights deprivation was "unnecessary and wanton," and whether, on this Eighth Amendment violation, McCord sustained injury sufficient for recovery under 42 U.S.C. § 1983.

### Eighth Amendment Violations

██ McCord's specific allegations of cruel and unusual punishment had to do with his repeatedly having to sleep and live in sewage and foul water. We apply the totality of the circumstances test which this Court set down in *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.1981) (en banc), to reach our initial conclusion that McCord's Eighth Amendment rights were violated because of these conditions. Under this test, the Court determines whether conditions of confinement violate the constitutional prohibition against cruel and unusual punishment by looking to the totality of the conditions in the prison rather than institutional practices separately. *See McCord,* 910 F.2d at 1250.

We directed the magistrate on remand to "elucidate the conditions under which McCord was compelled to exist in order that the totality of conditions may be assessed." *Id.* The magistrate found that between 1982 and 1984 McCord was housed in prison cells where he was often if not continually subjected to "harsh and occasionally disgusting" conditions. The magistrate also found that McCord lived in roach-infested, windowless, unlighted cells into which rain water and backed-up sewage leaked. The magistrate did not determine how frequently these conditions occurred.

Maggio, sued individually and in his official capacity as Warden of LSP, has never denied the substance of McCord's allegations. On the contrary, Maggio freely admits in his Supplemental Brief that McCord endured horrible conditions during his confinement in CCR. Maggio states:

Prisoner McCord was confined in an unlighted, windowless cell with only a small hole cut in the steel door for outside access. Prisoner McCord was confined to this cell for twenty-three (23) hours a day. He was allowed out of his cell for one (1) hour a day to exercise and take a shower. CCR was an old building in need of repair at the time Prisoner McCord was assigned to it.

When hard rains occurred the roof of the building would leak and the sewer lines sometimes backed up. This would cause water build up in and/or human waste backing up in CCR cells including that of Prisoner McCord. Cells in CCR would also on occasion have water build up and sewage back up as the result of plumbing problems. The plumbing in CCR was in need of repair.

Maggio also acknowledges that for a 10–month period in 1982 there were no bunks in the CCR cells. McCord and other prisoners were provided mattresses at night which were placed on the sometimes flooded floors of the cells, and, as Maggio admits, McCord "either had to stand up all night or sleep on a wet mattress on the floor." The mattresses were removed the following morning at 7:00 a.m., and, although the magistrate found that the cells were cleaned every day with mops, for at least some of the remainder of each day McCord was forced to choose between standing, or lying or sitting down in foul water and refuse.

As we stated in our earlier opinion in this case, this Court has time and again recognized that where a prison inmate is subjected to intolerable, deplorable conditions, especially when solitarily confined, the prisoner is entitled to relief under the Eighth Amendment, as well as possible consequent 42 U.S.C. § 1983 reparations. *See* 910 F.2d at 1250 (*citing Foulds v. Corley*, 833 F.2d 52, 53 (5th Cir.1987); *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1459 (5th Cir.1983)). *See also, Gates v. Collier*, 501 F.2d 1291, 1305 (5th Cir.1974) (combination of various unconscionable conditions constitutes Eighth Amendment violation). We find that the combination of the conditions detailed above clearly exceeded constitutional boundaries and converted the use of CCR in this instance "from a viable prisoner disciplinary tool to cruel and unusual punishment." *Gates*, 501 F.2d at 1304.

■ The force of this conclusion is not diminished by the magistrate's finding that prison administrators made diligent efforts "to keep things fixed and in working order" but were constrained by inadequate funds. As we held in *Gates*, lack of funds is not a sufficient justification for neglect of a citizen's constitutional rights. *Id.* at 1320. Furthermore, the possibility that inmate vandalism of plumbing fixtures was at times responsible for sewage backup, as is alleged by Maggio, while perhaps material, is certainly not dispositive on the basis of this record to the question of whether McCord personally was cruelly and unusually punished. *See Beck v. Lynaugh*, 842 F.2d 759, 761 (5th Cir.1988) (prisoner's Eighth Amendment claim not devalued by fact that prisoner vandalism may have contributed to poor prison conditions).

### Liability Under § 1983

Having found that the conditions McCord was forced to endure in CCR at LSP violated his constitutional rights, we must determine whether McCord is entitled to § 1983 damages. First, it is well established that the Eleventh Amendment bars actions for nonprospective relief against a state official in his or her official capacity. As the Supreme Court stated recently, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45, 58 (1989). *See also, Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209, 227 (1986) ("Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant.").

■ On the other hand, damages are available against a state official who is sued and held liable in his *individual* capacity. *Papasan*, 478 U.S. at 278 n. 11, 106 S.Ct. at 2940 n. 11, 92 L.Ed.2d at 227 n. 11. In such a suit, the official is entitled to a limited, "qualified" immunity. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24, 30 (1978). This immunity is defeated if the official took the complained-of action "with the malicious intention to cause a deprivation of rights," or the official violated clearly established statutory or constitutional rights "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818, 102 S.Ct. 2727, 2738, 2738, 73 L.Ed.2d 396, 409, 410. *See also, Procunier*, 434 U.S. at 565, 98 S.Ct. at 861, 55 L.Ed.2d at

848

33. Maggio asserted the defense of qualified immunity at the early stages of this lawsuit. McCord does not allege that Maggio acted maliciously, so we must look at whether the warden violated established law.

██ In this case, the magistrate found that local Health Department inspectors performed routine inspections of the CCR area and never found it to be unfit for human habitation. Obviously, there is a logical gap here. Had the Health Department officials visited the CCR building on or near a rainy day when raw sewage flowed from backed-up pipes and rainwater leaked from the ceiling into the CCR cells, surely the building would have been deemed unfit for human habitation. The magistrate did find that prison officials "made frequent, if not daily, efforts to keep things fixed and in working order," including remedying any deficiencies noted by the Health Department representatives and mopping up standing water. However, he also stated that at times foul water "would remain on the floor for approximately one day." It is clear to this Court that, if prisoners were forced to sleep and live in squalid conditions, LSP's attempts to correct the situation were feeble and unsatisfactory.

As to whether these conditions violated "established law," it has long been established that the Eighth Amendment "forbids confinement under conditions that can lead to painful and torturous disease with no penological purpose." *See Daigre v. Maggio,* 719 F.2d 1310, 1312 (5th Cir.1983) (*citing Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251, 258 (1978)). In *Daigre,* this Court held that a prisoner's claim that he was forced to use sheets and blankets which were not washed more than once a week did not give rise to a claim for § 1983 damages. 719 F.2d at 1311–12. In contrast, McCord often slept on a bare mattress in filthy water contaminated with human waste, unquestionably a health hazard. We conclude that this environment was so unhygienic as to amount to a clear violation of the Eighth Amendment. Maggio therefore cannot meet the threshold

requirements for qualified immunity. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.

A public official may nevertheless be entitled to immunity if he can show that extraordinary circumstances prevented him from remedying the rights deprivation. *Id.* at 819, 102 S.Ct. at 2738–39, 73 L.Ed.2d at 411; *Thomas v. Sams,* 734 F.2d 185, 190 (5th Cir.1984). Although this defense is normally applicable only where the official "can prove that he neither knew nor should have known of the relevant legal standard," *id.,* the Supreme Court has applied it where budgetary constraints precluded the administrator of a state mental hospital from satisfying "normal professional standards." *Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28, 42 (1982). We emphasize that the "extraordinary circumstances" defense carries a highly difficult burden. *See e.g., Arebaugh v. Dalton,* 730 F.2d 970, 972–73 (4th Cir.1984). On remand, if Maggio claims that budgetary constraints or other circumstances inhibited his ability to correct the squalid conditions in CCR, the magistrate shall determine the truth of this claim, as well as whether any feasible alternative to housing McCord in the aforementioned conditions existed, before allowing the defense.

██ If the magistrate finds that Maggio is not entitled to the extraordinary circumstances defense, this still does not mean that upon remand he must be found liable for damages. First, Maggio's liability depends upon a showing that his action or failure to act brought about, or "caused," the violation of McCord's rights. *See Williams v. Treen,* 671 F.2d 892, 900 n. 15 (1982). In this setting, where the inmate was not in imminent danger, this Court has interpreted the causation element to require a showing that the infliction of harsh conditions was "unnecessary and wanton." *See Foulds,* 833 F.2d at 54–55 (§ 1983 claim for unsanitary solitary confinement conditions governed by "unnecessary and wanton" standard). *See also, Beck,* 842 F.2d at 761. The principle of deliberate and callous indifference, which is applicable

to claims of neglect of medical needs and of being placed in imminent danger of violence from other inmates or prison officials, does not control § 1983 prison conditions cases such as the instant case. *See id. Compare Estelle*, 429 U.S. at 106, 97 S.Ct. at 292, 50 L.Ed.2d at 261 (to state Eighth Amendment medical neglect claim, "prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need"); *McCord*, 910 F.2d at 1251 (same); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir.1986) (callous indifference standard applicable to prisoner's claims of injury at the hands of other inmates). Whether subjecting McCord to the above-described conditions was "unnecessary and wanton" will depend on a number of factors including the following: the extent to which Maggio knew of these unsanitary conditions and that prisoners were being exposed to the conditions; what steps Maggio took to correct these conditions or remove the prisoners from the unsanitary cells; and what he could have done to protect the prisoners from these conditions. *See Williams*, 671 F.2d at 900 n. 15.

■ Second, a showing of significant injury is a prerequisite to recovery under § 1983. *See Foulds*, 833 F.2d at 55.[1] On remand, the magistrate must find that McCord endured pain, suffering, and/or mental anguish sufficiently significant to justify monetary relief. However, McCord need not show "lasting harm." *See id.*

### Conclusion

We REVERSE the magistrate's determination that an Eighth Amendment violation did not exist. Since the magistrate did not reach the elements of the § 1983 claim, we REMAND for consideration of whether the "extraordinary circumstances" defense applies and for determination of (1) whether a causal connection exists between Warden Maggio's action or inaction and the deprivation of McCord's constitutional rights, and (2) whether McCord causally suffered a significant injury as a consequence of his being subjected to the deplorable conditions in CCR. In the event that he finds a § 1983 violation, the magistrate should determine the amount of damages due McCord, if any. Since these questions were not presented in the first hearing, we think it necessary that the magistrate hold an additional hearing to determine the answers to them.

*Reversed and Remanded.*

---

**1.** We find no basis or precedent for distinguishing § 1983 claims for Eighth Amendment prison conditions from excessive force cases where the requirement of significant injury is central to the test for recovery. *Cf. Huguet v. Barnett*, 900 F.2d 838, 841 (5th Cir.1990) (significant injury is essential to prisoner's § 1983 Eighth Amendment excessive force claim) (*citing Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989) (en banc)).