**Sherman WHITE, Jr., Plaintiff,**

v.

**Crispus C. NIX, et al., Defendants.**

**No. 4–91–CV–30051.**

United States District Court,
S.D. Iowa, C.D.

Oct. 26, 1992.

Jeffrey M. Lipman of Des Moines, Iowa, for plaintiff.

Suzie A. Thomas, Asst. Atty. Gen., for State of Iowa.

## OPINION AND ORDER

BENNETT, United States Magistrate Judge.

### I. *Introduction and Procedural Background*

Plaintiff, an inmate at the Iowa State Penitentiary at Fort Madison, Iowa ("ISP"), filed this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants, the warden and correctional personnel at ISP, violated his Eighth Amendment right

to be free from cruel and unusual punishment through their placement and retention of him in a screened prison cell at ISP. He also alleges that his placement in that cell was done in retaliation for his filing of previous lawsuits thereby violating his First Amendment rights, and that his continued housing in the screened cell violated his Fourteenth Amendment Due Process rights.

On May 17, 1991, the parties, pursuant to 28 U.S.C. § 636(c), consented to trial of this matter before a United States Magistrate Judge. On January 23, 1992, the case was transferred to the undersigned. Trial was held on July 8, 1992. Plaintiff was present and represented by Jeffrey M. Lipman of Des Moines, Iowa, and Defendants were represented by Suzie A. Thomas, Assistant Attorney General for the State of Iowa. Following the trial, the parties were given additional time in which to file briefs in this matter. Those briefs have now been filed, and the matter is now fully submitted.

The court concludes that because the conditions of the screened cell were neither unsanitary nor otherwise hazardous, the conditions of Plaintiff's confinement did not constitute an Eighth Amendment violation. The court further finds that Plaintiff was not placed in the screened cell in retaliation for his filing of lawsuits, and that his continued stay in that cell did not violate due process.

## II. *Findings of Fact*

On December 24, 1990, after an altercation with another inmate and subsequent dispute with a correctional officer, Plaintiff was served with a summary segregation notice. He was then placed in summary segregation status and transferred from cellhouse 219, a general population cellhouse, to cellhouse 319, cell I–1. Cellhouse 319 is a "lock-up" cellhouse in which inmates are housed pending investigations and for disciplinary infractions. Cell I–1 is a "screened cell." All the cells in cellhouse 319 are equipped with a toilet, and sink with hot and cold water. The cells have a single bed and a table. The cells are also wired for cable television. A screened cell differs from the typical "open" cell found in 319 in that all the furniture is bolted to the floor, a screened wire mesh covers the bars of the cell, and the cell has a single stainless steel toilet-sink unit instead of two separate ceramic units. The screened cells are employed to house inmates who present special security problems, or who are thought to be suicidal. It is not unusual for an inmate to be placed in a screened cell for fighting. The structure of the screened cells prevents inmates from destroying the furniture in the cell, and throwing objects from the cell.[1]

On December 27, 1990, a classification review of Plaintiff was held at which Plaintiff requested to be moved out of the screened cell. Defendant Washington, the unit manager, indicated that he would look into it. After Plaintiff was placed in cell I–1, that personal property which he was permitted by ISP regulations to have while in summary segregation was brought to him.[2] Plaintiff's toothbrush, however, was inadvertently not provided to Plaintiff. After informing the classification review committee of this fact, Plaintiff's toothbrush was returned to him on December 27, 1990.

On December 28, 1990, Plaintiff was found guilty by the disciplinary committee of violating institutional rules as a result of his actions on December 24, 1990, and was given as punishment ten days disciplinary detention, and 15 days of cell restriction which was to be served in a maximum security cellhouse. Plaintiff timely appealed that judgment on December 28, 1990, and on January 2, 1991, his appeal was denied.

On January 2, 1991, Plaintiff was again seen by the classification review committee. Plaintiff again requested to be removed from the screened cell. Defendant Washington informed Plaintiff that he would attempt to get him transferred that

---

**1.** The screened cell is not as secure as the closed front cells found in cellhouse 220, which are also employed to house inmates serving summary segregation or disciplinary detention.

**2.** The remainder of Plaintiff's personal property was inventoried and then placed in storage.

day. Plaintiff was transferred from cell I–1 to cell P–3 in cellhouse 319 on January 4, 1991. Cell P–3 is an open front cell.

Plaintiff was not transferred to another cell when he initially complained to the classification review committee on December 27, 1990, because of an unwritten policy at ISP against changing the assigned cell of an inmate in summary segregation until a final decision had been obtained regarding the inmate's status. On January 18, 1991, Plaintiff was transferred back to cellhouse 219. At no time during Plaintiff's stay in cell I–1 was he placed in strip cell status. Strip status refers to a inmate status designation, for inmates who are thought to be a threat, in which the inmate is stripped of those items which could be employed in a threatening manner.[3] Although an inmate in strip status would in all likelihood be placed in a screened cell due to the fact that the furniture is secured and objects cannot be passed into the cell, the fact that an inmate is placed in a screened cell does not mean that the inmate has been placed in strip cell status.

When a cell is vacated at ISP, ISP personnel sanitize the mattress and pillow with bleach. ISP personnel are also responsible for maintaining the cleanliness of the outside of screened cells. Inmates are responsible for keeping the insides of their cells clean. In order to accomplish this task, inmates are provided with cleaning supplies such as mops and scouring powder. While Plaintiff was housed in cell I–1, the conditions of that cell were not so unsanitary as to constitute a possible health hazard to Plaintiff. Specifically, although the wire mesh of the cell did cut down on ventilation, that portion of the cell was not covered with a mixture of dried human fecal material and food.

### III. CONCLUSIONS OF LAW

Plaintiff asserts that his placement in screened cell I–1 was done in retaliation for his filing of lawsuits. He further contends that the unsanitary conditions of cell I–1 violated his Eighth Amendment right to be free from cruel and unusual punishment, and that Defendants' failure to promptly transfer him from the screened cell once his administrative appeal was concluded violated due process.

**A. Eighth Amendment Claim.** The Eighth Amendment imposes the constitutional limitation on punishments that they cannot be "cruel and unusual." *Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981). The Eighth Amendment is applicable to the states through the Fourteenth Amendment. *Id.* at 344–45, 101 S.Ct. at 2398. The Court has interpreted the Eighth Amendment as " 'flexible and dynamic', and has extended the Amendment's reach beyond the barbarous physical punishments...." *Id.* at 345, 101 S.Ct. at 2398 (citation omitted). The Eighth Amendment's prohibition against cruel and unusual punishment includes conditions of confinement which "involve the wanton and unnecessary infliction of pain." *Id.* at 347, 101 S.Ct. at 2399. An analysis of the conditions of confinement must be grounded on the totality of the circumstances. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.1989).

A two-pronged showing is required in order to demonstrate an Eighth Amendment violation regarding the conditions of an inmate's confinement; one prong is objective, and the other subjective. *Wilson v. Seiter*, — U.S. —, —, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). First, the objective prong requires that the harm must result in a serious deprivation of " 'the minimal civilized measure of life's necessities.' " *Id.* (quoting *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399). No static test exists for determining whether conditions of confinement constitute cruel and unusual punishment. *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir.1991). The alleged harm must be considered in light of " 'contemporary standards of decency.' " *Hudson v. McMillian*, — U.S. —, —, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)).

---

**3.** ISP's policy on the use of strip cell status is set out in ISP policy 84–4–16–574CR.

The subjective second prong requires that the inmate show that the correctional official acted with "deliberate indifference" to the conditions. *Wilson,* —— U.S. at ——–——, 111 S.Ct. at 2325–26. The Court's basis for this Eighth Amendment requirement was that when "the pain inflicted is not formally meted out *as punishment* by the statute or sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Id.,* —— U.S. at ——, 111 S.Ct. at 2325.

The conflict here centers on the factual dispute regarding the condition of cell I–1 during Plaintiff's incarceration there. The court has found that although the wire mesh of the cell undoubtedly restricted some circulation of air in the cell, the cell's wire mesh was not encrusted with human feces and food material so as to be a health hazard. In reaching this conclusion, the court notes that although Plaintiff requested to be removed from the cell he did not mention that the reason why he wished to be transferred was due to the sanitary conditions of the cell.

The court also notes that if Plaintiff had complained about the conditions of cell I–1 he would have been provided with cleaning materials which would have enabled him to correct the claimed sanitary deficiencies in the cell. The significance of this fact is that it casts doubt on Plaintiff's claims regarding the severity of the conditions found in the cell. This also indicates that if the cell was not as clean as Plaintiff wished, its state of uncleanliness was of Plaintiff's own choosing. Finally, the court finds compelling Defendant Washington's testimony that if the cell was in the squalid conditions alleged by Plaintiff, the entire cellblock, including the correctional staff, would be forced to suffer from the stench. Even though inmates in the screened cells do, on occasion, throw fecal material and food against the wire mesh screens, the screened cells are subjected to sufficient cleaning such that the cells do not represent health hazards to the inmates who reside in them.

Although the court has no doubts Plaintiff found his stay in cell I–1 to be unpleas-ant, prison conditions that create "temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" do not constitute Eighth Amendment violations. *Adams v. Pate,* 445 F.2d 105, 108–09 (7th Cir.1971). The Supreme Court has similarly noted that the Constitution " 'does not mandate comfortable prisons'.... " *Wilson,* —— U.S. at ——, 111 S.Ct. at 2324 (quoting *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400). *See also Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th Cir.1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obligated to provide constitutionally adequate confinement.").

Another factor which must be figured into the Eighth Amendment calculus is the relative brevity of Plaintiff's stay in the screened cell. *See Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989) ("Conditions, such as filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.' " (citations omitted)); *see also Rust v. Grammer,* 858 F.2d 411, 412 (8th Cir.1988) (inmate clothed only in boxer shorts, fed cold sandwiches and tap water, and denied exercise and showers during nine day lock down of unit did not violate Eighth Amendment); *Harris,* 839 F.2d at 1235–36 (confinement for five to ten days in "filthy, roach-infested" cell without toilet paper for five days did not constitute cruel and unusual punishment). Here, Plaintiff was only confined to the screened cell on a temporary basis for some eleven days. Although he had to endure conditions not to his liking, those conditions were fleeting. The conditions which existed in cell I–1 do not, moreover, approach those previously held to be unconstitutional. *See McCord v. Maggio,* 927 F.2d 844, 847 (5th Cir.1991) (inmate confined in unlighted, roach-infested cell in which he often had to sleep and live in foul water and sewage); *Gates v. Collier,* 501 F.2d 1291, 1305 (5th Cir.1974) (confinement in unsanitary and unsafe conditions, solitary confinement in dark hole without hygienic materials, and punishment by the administration of milk of magnesia).

As for the subjective prong of the test, there is nothing in the record to suggest that Plaintiff was placed in a screened cell for any reason other than his assaultive conduct. The court therefore holds that the minimal deprivations which occurred in this case do rise to an Eighth Amendment violation. *See Green v. Baron*, 879 F.2d 305, 309 (8th Cir.1989) ("A minimal deprivation does not violate the Constitution.").

■ B. *Retaliation Claim.* Plaintiff also claims that his placement in a screened cell was done in retaliation for his previous filing of lawsuits against ISP staff. Prison officials may not retaliate against an inmate for exercising his right of access to the court. *Dace v. Solem*, 858 F.2d 385, 388 (1988); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir.1987). Deference is owed to prison officials security determinations. *Falls v. Nesbitt*, 966 F.2d 375 (8th Cir. 1992). In *Falls*, the Eighth Circuit stated "[i]t is fundamental that prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 379 (citing *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)).

■ Deference to the determinations of prison administrators is wide-ranging but not boundless. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Therefore, federal courts must discharge their duty to protect constitutional rights of prison inmates when a prison regulation or practice offends a fundamental constitutional guarantee. *Johnson v. Avery*, 393 U.S. 483, 486, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969).

As discussed above, Plaintiff has failed to show that his placement in a screened cell was other than for reasons of institutional security and safety. It was clearly an exercise of administrative discretion as to whether to transfer Plaintiff to cellhouse 319. *See Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir.) (transfer of inmate within prison is matter of discretion for correctional personnel), *cert. denied*, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 79 (1984); *see also Wright v. Caspari*, 779 F.Supp. 1025, 1030 (E.D.Mo.1992). The court therefore finds that Plaintiff has failed to prove that his placement in a screened cell was retaliatory.

■ C. *Due Process Claim.* Plaintiff also contends that Defendants' forty-eight hour delay in transferring him from the screened cell after he had exhausted his administrative appeals constitutes a due process violation. In *Hewitt v. Helms*, 459 U.S. 460, 466–68, 103 S.Ct. 864, 868–70, 74 L.Ed.2d 675 (1983), the Supreme Court held that an inmate has no constitutional right to remain in the general prison population. As a result, the placement of inmates in non-punitive administrative segregation does not impact upon a liberty interest protected by the Due Process Clause of the United States Constitution. *Id.* at 468, 103 S.Ct. at 869–70. The Court, however, did point out that a state law may create a liberty interest, protected by the Fourteenth Amendment, if state regulations place substantive limitations on the exercise of official discretion, and the regulation contains language of an "unmistakably mandatory character." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). The issue here is whether a liberty interest has been created by an ISP regulation. *See Williams v. Armontrout*, 852 F.2d 377, 378 (8th Cir.), *cert. denied*, 488 U.S. 996, 109 S.Ct. 564, 102 L.Ed.2d 589 (1988).

Plaintiff has not directed the court's attention to any regulations which allegedly create such a liberty interest. The only "regulation" Plaintiff points to is the informal ISP rule that inmates in summary segregation are not to be transferred until they have exhausted their administrative appeals. This informal rule is the very antithesis of the regulation containing mandatory language referred to in *Thompson*. Accordingly, Plaintiff's due process claim must be denied.

## ORDER

It is therefore the order and judgment of the court that judgment be entered for Defendants.