**Richard SAPPINGTON**

v.

**Wayne ULRICH, et al.**

**No. 194–CV–201.**

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 15, 1994.

Richard Sappington, pro se.

Mark Kosanovich, Assistant Atty. Gen., Austin, TX, for defendant.

### MEMORANDUM CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HINES, United States Magistrate Judge.

Plaintiff, Richard Sappington, proceeding pro se, brings this civil rights suit pursuant to Title 42 U.S.C. § 1983 against Doctor Wayne Ulrich, the health administrator of the Texas Department of Criminal Justice— Institutional Division ("TDCJ–ID"), Stiles Unit and Doctor Cantu, the staff physician at the same facility.[1] Plaintiff alleges he obtained constitutionally inadequate medical care for an ankle injury incurred at TDCJ–ID.

The above-styled action was referred to the magistrate judge pursuant to Title 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate, dated July 3, 1980, for findings of fact, conclusions of law, and recommendations for the disposition of the case. The parties subsequently consented to trial and disposition by the undersigned magistrate judge.

### I. Background

Plaintiff injured his ankle playing basketball at the Stiles Unit of TDCJ–ID on March 28, 1994. Shortly after the injury, Nurse Bellanger and Dr. Cantu examined plaintiff in the prison infirmary. X-rays allegedly revealed multiple fractures and chips to the bones in the right foot. Plaintiff alleges Dr. Cantu acknowledged the prison did not have adequate facilities to treat plaintiff's injury.

---

1. On August 29, 1994, defendant Nurse Jeanne Bellanger was dismissed as a defendant, pursu- ant to 28 U.S.C. § 1915(d).

Dr. Cantu designated plaintiff's status "expedited" for transfer to the University of Texas Medical Branch ("UTMB") in Galveston, Texas on March 29, 1994. *See* Defendant's Motion for Summary Judgment, September 26, 1994, at 5. This status indicated plaintiff would be scheduled for a hospital appointment within thirty days. *Id.* The prison medics wrapped plaintiff's foot in ace bandages and gave him crutches.

Plaintiff was not transported to UTMB. Instead, his status was changed to "routine." *Id.* This designated him for a hospital appointment within six months. *Id.* By April 5, 1994, the foot was swollen and discolored. Plaintiff's Complaint, April 7, 1994, at Appendix 1. Plaintiff requested the foot be examined on several occasions, and exhausted grievance procedures. *See* Initial Report and Recommendation of the United States Magistrate Judge, *Sappington v. Ulrich,* No. 1:94–CV–201, at 3 (filed June 22, 1994) (delineating documentation of sick call requests presented as evidence by plaintiff).

On June 3, 1994, this court conducted an evidentiary hearing and assessed the need for a temporary restraining order. *See Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985). Plaintiff appeared pursuant to a writ of habeas corpus ad testificandum. Defendants made no appearance, although adequate notice of the hearing was given.

Testimony and other evidence at the hearing revealed plaintiff's foot remained unset and unexamined by hospital personnel almost three months after the injury. The magistrate judge's report recommended a temporary restraining order be entered. On August 29, 1994, Hon. Howell Cobb, United States District Judge, entered a restraining order for plaintiff's transfer to John Sealy Hospital.

Plaintiff received hospital treatment on August 17, 1994, almost five months after his initial injury.

## II. *Motion for Summary Judgment*

### A. Defendants' Motion

Defendants argue plaintiff cannot show acts or omissions evincing a deliberate indif-

ference to a serious medical need. Defendants argue that because plaintiff was examined by the staff physician and treatment was administered in the form of ace bandages, issuance of crutches, medication, and alteration in work schedule, any claim of inadequate medical care is eviscerated. Defendants contend plaintiff cannot maintain a claim for respondeat superior against defendant Ulrich. Lastly, defendants assert the defense of qualified immunity.

### B. Plaintiff's Response

Plaintiff argues the medical care he received was inadequate in that he should have been taken to the hospital the day of his injury. To counter the doctrine of respondeat superior, he alleges he had direct contact with defendant Ulrich via inmate request forms. Plaintiff further alleges he received deliberately indifferent care not only in the long wait for a hospital referral, but because Dr. Cantu knew of his injury and recommended the foot be kept in a splint for thirty days. However, no splints were available for issuance.

## III. *Discussion*

■ Federal Rule of Civil Procedure 56(c) states that summary judgment shall be rendered if "there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221–23 (5th Cir.1985).

■ In deciding a motion for summary judgment, the court must make a threshold inquiry in determining whether there is a need for trial. In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Summary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact. *Smith v. Xerox Corp.*, 866 F.2d 135, 137 (5th Cir.1989), quoting *Bynum v. F.M.C. Corp.*, 770 F.2d 556, 576 (5th Cir.1985); FED. R.CIV.P. 56(c).

■ Because summary judgment is a final adjudication on the merits, courts must employ this device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir.1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir.1980).

### a. Qualified Immunity

■ A defense of qualified immunity may be asserted prior to a defendant's answer in a motion to dismiss, after an answer in a motion for summary judgment, or at trial. *See Edwards v. Cass County, Tex.*, 919 F.2d 273 (5th Cir.1990). Once a defendant has answered, assertion of qualified immunity is properly presented as a summary judgment motion or, indirectly, as a motion for judgment on the pleadings. *See* FED. R.CIV.P. 12(c). The essential difference is the burden of proof and the evidence to be considered by the court, as motions to dismiss are generally confined to the pleadings while motions for summary judgment may encompass other submitted evidence. *See, e.g., Chevalier v. Animal Rehab. Center, Inc.*, 839 F.Supp. 1224 (N.D.Tex.1993). Regardless, "[the] qualified immunity question should be resolved at the earliest possible stage of the litigation." *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir.1988).

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982). *See also Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Chrissy F. v. Mississippi Dep't of Public Welfare*, 925 F.2d 844, 848 (5th Cir.1991); *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986); *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985).

■ The shield of qualified immunity is not limited to high-ranking officials. If a government official acts within the scope of general matters committed to his or her control or supervision and does not act beyond the authority allocated, the doctrine of immunity applies regardless of the official's rank. *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965).

■ When a government official claims immunity, plaintiff must satisfy a heightened pleading standard.[2] Plaintiff must allege with sufficient particularity all material facts establishing his right to recovery, including facts which negate the official's immunity defense. *Jacquez*, 801 F.2d at 791; *Elliott*, 751 F.2d at 1473, 1478–79, 1482. "[A] plaintiff must state facts, which, if proved, would defeat the defense." *Babb*, 33 F.3d at 475. Plaintiff must "state[ ] with factual detail and particularity the basis for the claim which must necessarily include[ ] why the defendant-official can not successfully maintain the defense of immunity." *Elliott*, 751 F.2d at 1473.

■ Because defendants Ulrich and Cantu were employed by the state as individual officers with health care matters committed to their control and supervision, they may properly assert the qualified immunity defense. Thus, plaintiff must assert facts that show no reasonable officer could believe the care received was permissible under the law as it existed at the time of the incident.

---

2. In 1993, the Supreme Court struck down the heightened pleading requirement in § 1983 actions against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, the Fifth Circuit recently decided heightened pleading is required in § 1983 litigation against municipal *officers*. *Babb v. Dorman*, 33 F.3d 472 (5th Cir.1994).

To establish a claim of inadequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Green v. McKaskle,* 788 F.2d 1116, 1126 (5th Cir.1986); *Johnston v. Lucas,* 786 F.2d 1254, 1259 (5th Cir.1986). *See Daniels v. Williams,* 474 U.S. 327, 328–34, 106 S.Ct. 662, 663–66, 88 L.Ed.2d 662 (1986). Deliberate indifference recently has been defined as "the subjective recklessness as used in the criminal law." *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Deliberate indifference results when a government official is actually aware of facts that indicate a "substantial risk of serious harm exists," *id.* at —, 114 S.Ct. at 1979, and then disregards those risks.

Allegations of intentional denial or delay of medical care state a claim under the Eighth and Fourteenth Amendments, *Gamble,* 429 U.S. at 104–05, 97 S.Ct. at 291–92, whereas mere allegations of negligence or lack of due care do not. *Daniels,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662.

Review of submissions before the court indicates there are sufficient facts present to establish a material issue of genuine fact as to whether entitlement to qualified immunity is warranted. Plaintiff has alleged:

(1) Defendant Dr. Cantu knew of his condition through physical examination and other treatment or requests;

(2) Defendant Wayne Ulrich knew of his condition via inmate request forms;

(3) Dr. Cantu knew the appropriate course of medical procedure at least included a hospital visit and a splint, both of which plaintiff asserts he never received; and

(4) That Dr. Cantu and Ulrich took no action to pursue the proper course of medical care.

These raise material questions of fact which preclude a grant of summary judgment. He has supported his allegations with specific facts and instances in which he was denied treatment and his repeated requests for additional treatment went unheeded. As this was the governing law at the time of the incident, plaintiff has satisfied his burden and summary judgment should not be granted on this point.

**b. Respondeat Superior**

No cause of action exists under § 1983 for the negligent supervision of employees. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Vela v. White,* 703 F.2d 147, 153 (5th Cir.1983). Therefore, only those officials who were personally involved in an alleged wrong, those who were deliberately indifferent in training wrongdoers, or those who promulgated the policies followed by the wrongdoers are held responsible. *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (city policy regarding training of personnel to supply medical care for pretrial detainee held to be a basis for suit); *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir.1983); *Bowen v. Watkins,* 669 F.2d 979, 988 (5th Cir.1982), *Watson v. Interstate Fire & Cas. Co.,* 611 F.2d 120, 123 (5th Cir.1980).

In the case *sub judice,* plaintiff asserts he sent inmate request forms about his condition directly to defendant Ulrich, to no avail. Defendants have submitted evidence of four of these requests, all addressed to "Wayne Ulrich, Infirmary." The requests were submitted at five day intervals, perhaps signaling some degree of urgency on the part of plaintiff. Defendant Ulrich has not contested that he is the health administrator of the Stiles Unit. He also has not contested that he is the appropriate person to whom a prisoner should submit inmate request forms for medical care, or that he has authority to act on the requests.

These forms indicate, at least at this stage in the proceeding, that Ulrich had personal involvement with the matter at hand. Failure to act can amount to deliberate indifference. Therefore, plaintiff asserts a direct claim against defendant Ulrich and not one of respondeat superior. Summary judgment on this issue cannot be granted.

### c. Lack of a Genuine Factual Question Regarding Deliberate Indifference

Both defendants argue there are no genuine issues of fact or law in dispute in the case at bar because plaintiff received medical treatment from prison officials. Defendant offers case law which purports to show adequate evidence of treatment will negate a finding of deliberate indifference. *See McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir.1990); *Martinez v. Griffin*, 840 F.2d 314 (5th Cir.1988) (per curiam).

These precedents do not create a rigid standard to quantify how much medical care is deemed "adequate" for purposes of the Eighth Amendment. Instead, *McCord* explicitly states "no definitive index exists confining an Eighth Amendment analysis." *McCord*, 910 F.2d at 1250. *Martinez* presents a set of facts wholly different from the one at hand, and addresses the dismissal for frivolousness of a prisoner's medical claim premised on the quality of a diet prescribed for a peptic ulcer. This is a far cry from the allegations of serious medical need presented by plaintiff. *Martinez*, 840 F.2d at 315.

 The Eighth Amendment protects against *acts or* omission, not merely omissions. Consequently, it is not only the absence of medical care that gives rise to a cause of action, but also malicious treatment of a medical condition. Inadequate medical care cannot be reduced to mere quantification, because it also encompasses the *quality* of care. Hypothetically, defendants could show plaintiff visited the infirmary and was seen by a doctor every day for an entire year, but if plaintiff proved the doctor did not treat a known and serious medical need, or rendered malicious treatment, then a cause of action would still lie. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Green*, 788 F.2d at 1126; *Johnston*, 786 F.2d at 1259. While a short delay in treatment may not be sufficient to show deliberate indifference, the proliferation of delay over many weeks raises a

genuine issue of material fact as to deliberate indifference.

As discussed *supra*, both Ulrich and Dr. Cantu are alleged to have personally participated in the denial of splints, hospital care, and surgery, among other medical treatments. Therefore, genuine issues of fact exist as to each defendant. In this case, defendants argue plaintiff received adequate medical care and plaintiff disagrees. More than a mere disagreement is presented however, because plaintiff asserts facts, that if true, present genuine issues of fact which should properly be reserved for the trier of those facts.[3] Therefore, summary judgment cannot be granted.

---

3. For example, plaintiff alleges Dr. Cantu prescribed a splint for his ankle and then failed to issue him a splint because the infirmary was out of stock. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, October 17, 1994, at 1. Why plaintiff may have been denied a splint when he was in need of one is a question that may have an impact on the ultimate outcome of the case, that is, whether there was actual knowledge of a serious medical need which was disregarded.