[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, a Connecticut inmate, received a disciplinary report on December 21, 1997 for Security Risk Group Affiliation, pursuant to Department of Corrections Administrative Directive 9.5, Code of Penal Discipline, subsection 10.U (hereinafter referred to as "Code").[1] Specifically, petitioner was charged with shaking hands with another inmate in a certain manner characteristic to only Latin King gang members. The requirements of the Code were followed as the petitioner was notified of the charges against him within twenty-four hours of the alleged misconduct. An investigator was appointed who met with petitioner and advised him of the investigation and hearing process. Petitioner pleaded not guilty, requested three witnesses, a videotape of the area of the alleged misconduct, and the services of an advocate.
A disciplinary hearing was conducted on December 30, 1997, with Lieutenant Joseph Negron serving as the hearing officer. Lieutenant Negron allowed petitioner to testify, read the statements of two inmate witnesses, and reviewed the disciplinary report, investigation report and advocate report before making his decision. He rejected the claim of petitioner to review the video tape, believing there was sufficient evidence for his findings, specifically the eye witness report of Correction Officer Garvey.[2]
Lieutenant Negron found petitioner guilty of the stated CT Page 2682 violation on December 30, 1997 and imposed sanctions of ninety days loss of good time, thirty days loss of visits, fifteen days confinement to quarters, and fifteen days punitive segregation.
The essence of the petitioner's claim is that he was deprived of due process of law by the fact that Hearing Officer Negron denied him the right to review and introduce into evidence the videotape of a camera allegedly situated in the area of the subject incident.
Two decisions of the Supreme Court of the United States define the proper standard of review in prison disciplinary hearings. The first, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963,41 L.Ed.2d 935 (1974), holds that minimal due process must be provided when an inmate is given a disciplinary report. This includes notice of the charges against him, a written statement as to the evidence relied on and the reasons for the disciplinary action and an opportunity to present witnesses and evidence in his defense. Id., 418 U.S. 539, 564-565.
The second, Superintendent. Mass. Corr. Institution v. Hill,472 U.S. 444, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) holds that due process is satisfied if "some evidence" supports the decision to revoke good time credits. Id., 472 U.S. 444, 455-456. Such a standard limits court review in the vast majority of disciplinary hearings so long as any evidence in the record supports the disciplinary board's decision. Id. Specifically, the holdings of that court were as follows:
 We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 278 U.S., at 106, 47 S.Ct. at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133-134, 44 S.Ct. 260, 260-261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (CA8 1974). We decline to adopt a more stringent evidentiary standard as a constitutional CT Page 2683 requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See Wolfe, 418 U.S., at 562-563, 567-569, 94 S.Ct., at 2977-2978, 2980-2981. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, id., at 556, 94 S.Ct., at 2974, and neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979), nor any other standard greater than some evidence applies in this context.
Turning to the facts of this case, the petitioner is not arguing that he had no notice of the charges against him, nor is he contending that he was not allowed an opportunity to present witnesses or evidence except as to the videotape. Similarly, he does not suggest that there was no evidence on the record to support the decision of Lieutenant Negron.
The Supreme Court of the United States in Ponte v. Real,471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) held that the due process clause does not require the reasons for a refusal to call witnesses requested by an inmate at a disciplinary hearing to be place in writing or otherwise exist as part of the administrative record at the disciplinary hearing; although due process requires prison officials at some point to explain their reasons for refusing to call witnesses, they may do so either by making the explanation a part of the administrative record in the disciplinary proceeding or by later presenting testimony in court if the deprivation of a liberty interest is challenged because of the refusal to call the requested witnesses. Lieutenant Negron did testify that he relied on the observations of Correctional Officer Garvey in making his decision. He indicated that he did not utilize any videotape in making his decision and stated that he simply believed the officer as opposed to the petitioner and his witnesses. Lieutenant Negron also indicated that there was no necessity for a videotape when the officer actually saw the handshake.
It appears, therefore, that the hearing was held pursuant to the Code and the respondent provided some evidence (eyewitness report) of the violation. This court does find the procedural CT Page 2684 rules of the Code were complied with, and the evidence presented was sufficient, under the standards set by case law, for Lieutenant Negron to make his findings.
Much of the case law relevant to this issue is to the effect that the internal management of prisons should properly be placed within the judgment of prison administrators, barring a violation of due process rights. In that regard, the court in Washington v.Meachum, 238 Conn. 692, 734 (1996) was unwilling to "invade the province" of the regulations set by the Department of Corrections for the prison population. That court, in support of that proposition, stated:
 Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. [Internal quotation marks omitted.]
The petitioner's complaints concerning loss of statutory good time are barred by the Connecticut case of Abed v. Commissioner,43 Conn. App. 176, 682 A.2d 558 (1996), cert. denied,239 Conn. 937, 684 A.2d 707 (1996). In that case, the petitioner alleged that his liberty interests were violated by the Commissioner's policy preventing those inmates classified as security risk group safety threat members from earning statutory good time. The court held that inmates have no liberty interest in unearned statutory good time credits and that a court may only entertain those habeas petitions that address an illegal confinement or deprivation of liberty. Vincenzo v. Warden, 26 Conn. App. 132,137, 599 A.2d 31 (1991).
In Wheway v. Warden, 215 Conn. 418, 576 A.2d 494 (1990), the court held, inter alia, that prison classification programs (such as placement in a security risk group) do not create any liberty interest or any constitutional entitlement to due process. Id., 431-32. Similarly, in McCord v. Maggio, 910 F.2d 1248 (1990), the Fifth Circuit held that prison inmates have no right to classification and that such matters should be left to the CT Page 2685 discretion of prison officials. Id., 1250-1251.
Once again, the petitioner's hearing complied with the relevant case law and all requirements of due process. `His subsequent assignment to and classification as a security risk group member did not impact any of his liberty interests.
The appeal is dismissed and the Petition for Writ of Habeas Corpus is denied.
Robert T. Resha, Judge.